FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 29 2002 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

LISA SCHOLTZ,

Plaintiff,

-against-

ANTONIA C. NOVELLO, Commissioner of the New York State Department of Health; the NEW YORK STATE DEPARTMENT OF HEALTH; BRIAN WING, Commissioner of the New York State Office of Temporary and Disability Assistance; the NEW YORK STATE OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE; DAN HICKEY, Commissioner of the Suffolk County Department of Social Services; and the SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES,

Defendants.

---------------------------------------------------------------X

Civil Action No. CV 02 4245

Assigned District Court Judge: PLATT, J.

Assigned Magistrate Judge: WALL, M.J.

(S.J.)

**COMPLAINT**

**TRIAL BY JURY DEMANDED**

## PRELIMINARY STATEMENT

1. This is an action for declaratory and injunctive relief, and damages, challenging the policies and practices of the New York State Department of Health ("DOH"), the New York State Office of Temporary and Disability Assistance ("OTADA"), and the Suffolk County Department of Social Services ("SCDSS") that continually fail to provide the New York State Medical Assistance ("Medicaid") program private duty nursing services authorized on Lisa Scholtz's care plan.

2. Ms. Scholtz contends that defendants' policies and practices are arbitrary, irrational, and contrary to law in violation of the United States Constitution, Medicaid law, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, as amended ("Rehabilitation Act"), and the New York State Constitution.

3. Additionally, Ms. Scholtz alleges that defendants' failure to correct the systemic problem of not providing authorized Medicaid nursing services constitutes deliberate indifference to plaintiff's medical needs and places her in danger of bodily harm and possible institutionalization in violation of her rights secured by the United States Constitution, Medicaid law, the ADA, the Rehabilitation Act, and the New York State Constitution.

4. Ms. Scholtz further contends that defendants' failure to provide case management services to recipients of Medicaid private duty nursing services, like the plaintiff, also violates the United States Constitution, Medicaid law, the ADA, the Rehabilitation Act, and the New York State Constitution.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action for violations of federal laws and regulations pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff's claims for relief under federal law arise under 42 U.S.C. § 1983, as defendants acted under color of state law. Additionally, plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202. Moreover, this Court has jurisdiction over plaintiff's claims for violations of state laws and regulations pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to these claims occurred in Suffolk County.

## PARTIES

7. Plaintiff, LISA SCHOLTZ, is a resident of Suffolk County.

8. Defendant, ANTONIA C. NOVELLO, is the Commissioner of DOH. Pursuant to New York State Social Services Law § 363-a (1), DOH is responsible for administering and supervising the Medicaid program in New York State. The Commissioner maintains offices at the Corning Tower Building, Albany, New York 12237.

9. Defendant, DOH, is the agency responsible for administering and supervising the Medicaid program in New York State. The agency maintains administrative offices at the Corning Tower Building, Albany, New York 12237.

10. Defendant, BRIAN WING, is the Commissioner of OTADA; he is responsible for the administration of hearing administrative appeals and enforcing administrative decisions as authorized by the commissioner of the DOH. He maintains offices at 80 Centre Street, New York, New York and at 40 North Pearl Street, Albany, New York 12243.

11. Defendant, OTADA, is the agency responsible for the administration of hearing administrative appeals and enforcing administrative decisions as authorized by the commissioner of the DOH. The agency maintains offices at 40 North Pearl Street, Albany, New York 12243.

12. Defendant, DAN HICKEY, is the Commissioner of SCDSS; he is responsible for the administration and enforcement of the Medicaid program in Suffolk County, including the Medicaid private duty nursing program. He maintains administrative offices in Ronkonkoma, New York.

13. Defendant, SCDSS, is the agency responsible for the administration and enforcement of the Medicaid program in Suffolk County, including the Medicaid private duty nursing program. The agency maintains offices in Ronkonkoma, New York.

**MEDICAID HOME NURSING SERVICES IN NEW YORK**

14. Medicaid, a program established under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, provides medical assistance, funded by federal and state governments, to individuals whose income and resources are insufficient to meet the costs of medical care, and are either aged 65 or over, blind, disabled, or members of families with dependent children. 42 U.S.C. § 1396 and 42 C.F.R. § 430 *et seq.* This assistance is intended to assist eligible individuals attain or retain capability for independence or self-care. 42 U.S.C. § 1396.

15. The Medicaid program is administered by a single state agency pursuant to a state plan which must be approved by the United States Department of Health and Human Services ("USHHS"). 42 U.S.C. § 1396a(a)(5) and 42 C.F.R. § 431.10.

16. New York's Medicaid plan must be in effect throughout the State. 42 U.S.C. § 1396a(a)(1) and 42 C.F.R. § 431.50.

17. Defendant DOH administrates New York's Medicaid program and is responsible for providing all necessary medical services under broad mandatory and optional categories of Medicaid services pursuant to 42 U.S.C. §§ 1396, 1396a, and 1396d(a).

18. As the responsible agency, DOH implements and supervises the local administration of the State's Medicaid plan by SCDSS and the other local social services districts. New York Public Health Law ("P.H.L.") § 201(1)(v).

19. The State Legislature has set as a priority concern the expansion of home care services including nursing services. P.H.L. §§ 3600 and 3602.

20. Private duty nursing services are available in the home under the New York State Medicaid Program to eligible recipients, 18 N.Y.C.R.R. § 505.8, pursuant to federal statute and

regulation. 42 U.S.C. § 1396d and 42 C.F.R. § 440.70.

21. Defendants must employ reasonable standards for determining the extent of medical assistance they provide. 42 U.S.C. §1396a(a)(17)(A).

22. Defendants must furnish Medicaid services with reasonable promptness. 42 U.S.C. §1396a(a)(8) and 42 C.F.R. § 435.930.

23. Defendants must ensure that services provided to Medicaid recipients are sufficient in amount, duration, and scope to reasonably achieve their purpose. 42 C.F.R. § 440.230(b).

24. Defendants must ensure that Medicaid payment rates are sufficient to enlist enough providers at least to the extent that such care and services are available to the general population in the geographic area. 42 U.S.C. §1396a(a)(30)(A) and 42 C.F.R. § 447.204. *See also*, 88 INF-8 § III(1).

25. Defendants must ensure that Medicaid services are provided in a manner consistent with the best interests of Medicaid recipients. 42 U.S.C. § 1396a(a)(19).

26. Defendants must ensure that the services made available to any Medicaid recipient shall not be less in amount, duration, or scope than the medical assistance made available to any other recipient. 42 U.S.C. § 1396a(a)(10)(B) and 42 C.F.R. § 440.240.

27. Defendants must assure the availability of funding necessary to sustain the amount, duration, scope, or quality of care and services provided under the plan. 42 U.S.C. §1396a(a)(2).

28. Defendants must furnish Medicaid regularly to all eligible individuals until they are found to be ineligible and make arrangements to assist recipients to get emergency medical care whenever needed, 24 hours a day and 7 days a week. 42 C.F.R. § 435.930.

29. Pursuant to Medicaid law, local social services districts must ensure the provision of

authorized Medicaid services, such as nursing, through case management. 18 N.Y.C.R.R. § 403.4(a) and 18 N.Y.C.R.R. § 505.16(c).

30. State Medicaid policy allows for the provision of an enhanced rate for private duty nursing services in appropriate circumstances. 88 INF-8 § III(2).

31. State policy prohibits local districts from requiring that Medicaid recipients provide an informal support caregiver as a condition to receiving authorization for private nursing services. 88 INF-8 § III(2).

32. Defendants must provide a hearing system that comports with due process, 42 C.F.R. § 431.205, including notice of the opportunity for a hearing at the time of any action affecting a Medicaid claim. 42 C.F.R. § 431.206.

33. Defendants must take final administrative action within ninety days from the date of the request for a hearing. 42 C.F.R. § 431.244.

34. Pursuant to Medicaid law, recipients challenging the adequacy of Medicaid assistance are entitled to receive the assistance unchanged until the State issues a fair hearing decision. 18 N.Y.C.R.R. § 358-3.6.

35. Medicaid services must be administered in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. §§ 35.130(d) and 41.51(d) and 45 C.F.R. § 84.4.

36. Federal law prohibits the provision of Medicaid services in a manner that limits, or effectively limits, the participation of qualified handicapped persons. 45 C.F.R. § 84.52(a)(4).

37. Federal law requires the provision of reasonable modifications of Medicaid policies, practices, or procedures when the modifications are necessary to avoid discrimination on the

basis of disability unless the modification imposes an undue burden. 28 C.F.R. § 35.130(b)(7).

38. Federal Medicaid policy requires that State Medicaid agencies prevent and correct inappropriate institutionalization and review intake and admission processes to assure that persons with disabilities are served in the most integrated setting appropriate. Such reevaluations require that states take reasonable steps to place individuals in the community when the treating professional determines that an institutionalized individual can live in the community with the right level of support services. USHHS Health Care Financing Administration Letters, dated July 29, 1998, and January 14, 2000.

**FACTS**

39. Plaintiff, LISA SCHOLTZ, is forty-one years old and diagnosed with Spina Bifida and quadriplegia.

40. On information and belief, and at all time relevant to this complaint, defendants knew, or should have known, that Ms. Scholtz was diagnosed with Spina Bifida and quadriplegia.

41. Ms. Scholtz is non-ambulatory, confined to a wheelchair, and needs assistance in transferring to her wheelchair.

42. On information and belief, and at all time relevant to this complaint, defendants knew, or should have known, that Ms. Scholtz is non-ambulatory, confined to a wheelchair, and needs assistance in transferring to her wheelchair.

43. Ms. Scholtz requires, and uses, a ventilator for respiration.

44. On information and belief, and at all time relevant to this complaint, defendants

knew, or should have known that Ms. Scholtz requires a ventilator.

45. At all times relevant to this complaint, Ms. Scholtz requires assistance with all her activities of daily living including the administration of medication, transferring, bathing, cooking, and eating.

46. On information and belief, and at all time relevant to this complaint, defendants knew, or should have known that Ms. Scholtz requires assistance with all her activities of daily living including the administration of medication, transferring, bathing, cooking, and eating.

47. Ms. Scholtz resides in a wheelchair-accessible apartment in Smithtown, New York.

48. Ms. Scholtz receives Medicaid benefits to assist her with the medical care and treatment of her disability.

49. Because of her disabilities, Ms. Scholtz is authorized by defendants to receive Medicaid private duty nursing services for assistance with her medical needs and activities of daily living, including administration of medication, suctioning, wound care, repositioning, range of motion exercise, transferring, bathing, cooking, and eating.

50. Ms. Scholtz is authorized by defendants to receive private duty nursing services in the amount of twenty-four hours per day.

51. Without these Medicaid nursing services, Ms. Scholtz faces the threat of bodily harm and institutionalization.

52. Ms. Scholtz owns and maintains an accessible van. In her home, she plans and directs the preparation of her meals. Her family and friends live nearby and visit often. In addition, she frequently travels into the community in her van.

53. Ms. Scholtz is a graduate of Hofstra University and has considerable work

experience, including jobs with the Internal Revenue Service and Suffolk County Office of Handicapped Services.

54. On information and belief, the New York State reimbursement rate for Medicaid private duty nursing services in Suffolk County remained unchanged from 1989 to October 2000.

55. On information and belief, the New York State reimbursement rate for Medicaid private duty nursing services is inadequate and substantially lower than the rate paid by other public and private health care providers for similar services.

56. On information and belief, and at all times relevant to this complaint, there has been a shortage of nurses certified to provide Medicaid private duty nursing services in Suffolk County.

57. On information and belief, the shortage of nurses certified to provide Medicaid private duty nursing services in Suffolk County results from the inadequate and substantially lower Medicaid reimbursement rate.

58. On information and belief, in 1998, defendants authorized 186,341 hours of Medicaid private duty nursing services in Suffolk County; only 119,517 of these authorized hours were provided.

59. On information and belief, in 1999, defendants authorized 598,601 hours of Medicaid private duty nursing services in Suffolk County; only 436,599 of these authorized hours were provided.

60. On information and belief, in 2000, defendants authorized 621,879 hours of Medicaid private duty nursing services in Suffolk County; only 419,572 of these authorized hours were provided.

61. On information and belief, and at all time relevant to this complaint, defendants knew, or should have known, that there was a shortage of Medicaid private duty nurses in Suffolk County and that authorized Medicaid private duty nursing services were not being provided in Suffolk County as a result of the shortage.

62. Since May 2001, defendants have failed to ensure the provision of the Medicaid nursing services authorized on Ms. Scholtz's care plan.

63. Since May 2002, defendants have failed to ensure the provision of any of the Medicaid nursing services authorized on Ms. Scholtz's care plan.

64. On information and belief, and at all time relevant to this complaint, Ms Scholtz has not received the Medicaid nursing services authorized on her care plan because the rate paid for such services is inadequate and substantially lower than the market rate paid by the general population for similar services.

65. On information and belief, and at all time relevant to this complaint, defendants knew, or should have known, that the Medicaid nursing services authorized on her care plan were not being provided to Ms. Scholtz.

66. On information and belief, defendants maintain a policy and practice of refusing to provide case management services (services provided to eligible persons to access necessary medical and other services) to Medicaid recipients authorized to receive private duty nursing services in the home.

67. On September 20, 2001, plaintiff, by her attorney, requested that defendants provide her with case management services.

68. On information and belief, defendants have refused to provide case management

services to Ms. Scholtz.

69. On information and belief, defendants required plaintiff to provide her own case management by advising her to arrange for her own authorized Medicaid nursing services by contacting various providers from a list supplied by SCDSS.

70. Plaintiff contacted the providers from the list supplied by SCDSS but could not find a nurse willing to work for the State Medicaid reimbursement rate.

71. On information and belief, defendants have not arranged for a higher rate of reimbursement to ensure the provision of authorized Medicaid nursing services to the plaintiff.

72. On information and belief, defendants continue to fail to exercise appropriate monitoring and case management responsibilities, as described above, and continue their failure to ensure that plaintiff receive medically necessary nursing services.

73. On information and belief, defendants maintain a policy and practice of not providing notice of the right to a hearing when authorized Medicaid private duty nursing services are not provided.

74. On information and belief, defendants never provided plaintiff with notice of the right to a hearing regarding their failure to provide authorized Medicaid private duty nursing services to the plaintiff.

75. On information and belief, SCDSS maintains a policy and practice requiring that Medicaid recipients receiving private duty nursing services provide an individual named as an informal support caregiver ("backup") for instances when defendants fail to ensure the provision of services.

76. On information and belief, SCDSS never requested or obtained approval from the

DOH for its "backup policy."

77. On information and belief, DOH policy specifically prohibits its agents, including SCDSS, from conditioning eligibility for private duty nursing services on a recipient maintaining a backup provider.

78. On information and belief, the DOH has taken no steps to correct the "backup policy" of SCDSS.

79. On information and belief, pursuant to its "backup policy," SCDSS will not provide Medicaid private duty nursing services to an otherwise qualified Medicaid recipient unless the recipient maintains a backup.

80. On information and belief, SCDSS refused to provide private duty nursing services to Lisa Scholtz unless she provided a backup.

81. As a result of the "backup policy," and because the alternative would mean institutionalization, Ms. Scholtz provided the name of her friend, Kenneth Young, as a backup.

82. As a result of this requirement, and because the alternative would mean institutionalization, Kenneth Young agreed to become the backup for Ms. Scholtz.

83. Since May 2001, when authorized Medicaid nursing services are not provided to Ms. Scholtz, Kenneth Young has been forced to provide the medically necessary services although he is not a nurse.

84. On information and belief, defendants provide no compensation to Mr. Young for the medically necessary services he provides to Ms. Scholtz.

85. As a result of the services Mr. Young provides, as set forth above, Ms. Scholtz has incurred a substantial debt to him.

86. Mr. Young is not willing to be the primary caregiver of Ms. Scholtz.

87. On September 19, 2001, plaintiff, by her attorney, requested a fair hearing from OTADA concerning defendants' failure to provide authorized Medicaid nursing services.

88. By notice dated September 19, 2001, OTADA acknowledged plaintiff's fair hearing request and directed that SCDSS provide aid to continue pending the hearing decision.

89. Despite the aid to continue order, defendants continued to fail to ensure that plaintiff receive the Medicaid private duty nursing services authorized on her care plan.

90. On October 04, 2001, plaintiff's attorney contacted OTADA complaining that Ms. Scholtz remained without authorized Medicaid private duty nursing services despite the aid to continue directive.

91. On October 05, 2001, plaintiff's attorney contacted SCDSS requesting that authorized Medicaid private duty nursing services be provided to Ms. Scholtz.

92. On October 16, 2001, plaintiff's attorney again contacted OTADA complaining that Ms. Scholtz remained without authorized Medicaid private duty nursing services despite the aid to continue directive.

93. Despite the letters of October 04, 05, and 16, 2001, defendants continued to fail to ensure that plaintiff receive the Medicaid nursing services authorized on her care plan.

94. On November 13, 2001, OTADA conducted a fair hearing to address SCDSS's consistent failure in ensuring the provision of authorized Medicaid private duty nursing services to Ms. Scholtz.

95. In its decision after fair hearing dated March 28, 2002 (Decision), DOH held that SCDSS's "action in providing authorized Nursing Services for Appellant was correct," despite

the fact that Ms. Scholtz did not receive her authorized nursing services from May 2001. The Decision did direct SCDSS "to continue to work with the provider agency so that authorized services can be provided to the Appellant."

96. On January 14, 2002, in a letter to the defendants, Lisa Scholtz requested that defendants increase the Medicaid reimbursement rate for her private duty nursing services as a reasonable accommodation in order to assure the receipt of authorized services.

97. On March 22, 2002, in a letter to the defendants, Lisa Scholtz again requested that defendants increase the Medicaid reimbursement rate for her private duty nursing services as a reasonable accommodation in order to assure the receipt of authorized services.

98. On information and belief, plaintiff's reasonable accommodation request would not be an undue burden for defendants.

99. On information and belief, Defendants did not respond to the letters of January 14 or March 22, 2002.

100. On information and belief, defendants intentionally, deliberately, and willfully refused to respond to plaintiff's reasonable accommodation request.

101. On information and belief, defendants maintain a policy and practice of refusing to respond to reasonable accommodation requests brought by Medicaid recipients pursuant to the ADA and/or Rehabilitation Act.

102. Lisa Scholtz would like to return to work; however, she cannot maintain a job without the nursing services authorized on her care plan. Recently, Ms. Scholtz was forced to turn down job offers from the Spina Bifida Association of America and the International Ventilator Users Association because she does not have the nursing services authorized on her

care plan.

103. As a result of the failure of the defendants to provide authorized nursing services, Lisa Scholtz has developed decubitus ulcers.

104. As a result of the failure of the defendants to provide authorized nursing services, Lisa Scholtz has developed atrophy and physical and mental pain and anguish.

105. As a result of the failure of the defendants to provide authorized nursing services, Lisa Scholtz has been unable to bathe on a consistent basis.

106. Lisa Scholtz wants to travel into the community more often; however, as a result of the failure of the defendants to provide authorized nursing services, she cannot make these trips. Over the last year, Ms. Scholtz has missed many events in the community including her friend's funeral, her cousin's wedding, and a baby shower because she does not have the nursing services authorized on her care plan.

107. Irreparable harm will result to Lisa Scholtz unless immediate injunctive relief is granted by this Court. Defendants' failure to ensure the medically necessary services authorized on her care plan denies her of essential medical benefits. Without the skilled nursing care authorized by her care plan, she risks being institutionalized. Presently, Kenneth Young, plaintiff's friend, is forced to provide her with medically necessary care although he is not a nurse and not willing to provide the services.

108. Lisa Scholtz has no adequate remedy at law or through the New York State administrative hearing process because her condition warrants immediate injunctive relief which the fair hearing process has failed to provide.

109. No prior application has been made for the relief requested herein.

## FEDERAL CLAIMS

### FIRST SET OF CLAIMS:
### Americans with Disabilities Act

110. Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 109 with the same force and effect as if set forth more fully herein.

111. At all times relevant hereto, Lisa Scholtz was and is a qualified individual with a disability as defined by the ADA because she is substantially limited in a major life activity. 28 C.F.R. § 35.104. Her medical condition prevents her from walking.

112. Defendants are public entities because they are government agencies and/or instrumentalities as defined by the ADA. 42 U.S.C. § 12131(1)(B). As public entities, they provide public services.

113. Defendants' policies and practices for the provision of Medicaid private duty nursing services, including the failure to ensure that plaintiff receive such services in a reasonably prompt, timely, and expeditious manner to avoid unnecessary and inappropriate institutionalization, violate 42 U.S.C. § 12131 and the implementing regulations at 28 C.F.R. Part 35.130, including 28 C.F.R. §§ 35.130(a); 35.130(b)(1)(i), (ii), (iii), (iv), (v),& (vii); 35.130(b)(3)(i), (ii), & (iii); 35.130(b)(7); 35.130(b)(8); and 35.130(d).

114. By enacting backup policies as a requirement for receipt of nursing services by the plaintiff, SCDSS violates the ADA including its mandate that programs and services be administered in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 35.130.

115. By allowing SCDSS to enact backup policies as a requirement for receipt of

nursing services by the plaintiff, DOH violates the ADA including its mandate that programs and services be administered in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 35.130.

116. By refusing to respond to reasonable accommodation requests of disabled Medicaid recipients, including the plaintiff, defendants violate the ADA.

117. By intentionally, deliberately, and willfully refusing to respond to reasonable accommodation requests of disabled Medicaid recipients, including the plaintiff, defendants violate the ADA.

118. Plaintiff was injured as a result of the aforementioned violations of defendants and is entitled to both injunctive relief and monetary damages.

119. Defendants also failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

120. Defendants' conduct has been intentional and willful and was done under color of law with specific intent to harass and disrupt the civil rights of plaintiff including the due process rights of the plaintiff and to cause her intentional harm in violation of plaintiff's Constitutional and Civil Rights.

121. That by reason of the foregoing, plaintiff has suffered and will continue to suffer conscious pain and agony; has suffered and will continue to suffer severe physical, mental and emotional pain and anguish, and has suffered and sustained serious and permanent injuries.

122. That by reason of the foregoing, plaintiff has been unable to attend to her usual occupation and duties, and has suffered and sustained severe and serious economic loss.

123. That by reason of the foregoing, plaintiff has also been damaged in the sum of One Million and 00/100 Dollars ($1,000,000.00) in compensatory damages.

**SECOND SET OF CLAIMS**
**Rehabilitation Act of 1973, As Amended**

124. Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 123 with the same force and effect as if set forth more fully herein.

125. At all times relevant hereto, Lisa Scholtz was and is a qualified individual with a disability as defined by the Rehabilitation Act because she is substantially limited in a major life activity. 29 U.S.C. § 705(20).

126. Defendants are public entities that provide public services and receive federal financial assistance and, as such, they are prohibited from discriminating against persons with disabilities as defined in the Rehabilitation Act. 29 U.S.C. § 794(b).

127. Defendants' policies and practices for the provision of Medicaid private duty nursing services, including the failure to ensure that plaintiff receive such services in a reasonably prompt, timely, and expeditious manner to avoid unnecessary and inappropriate institutionalization, violate the Rehabilitation Act and implementing regulations at 45 C.F.R., Part 84, including 45 C.F.R.§§ 84.4(a); 84.4(b)(1)(i), (ii), (iii), (iv), and (vii); 84.4(b)(2); and 84.4(b)(4). *See also*, 28 C.F.R. § 41.51.

128. By enacting backup policies as a requirement to the receipt of nursing services by the plaintiff, SCDSS violates the Rehabilitation Act including its mandate that programs and services be administered in the most integrated setting appropriate to the needs of qualified

individuals with disabilities. 28 C.F.R. § 41.51. *See also* 45 C.F.R. §§ 84.4 and 84.52.

129. By allowing SCDSS to enact backup policies as a requirement to the receipt of nursing services by the plaintiff, DOH violates the Rehabilitation Act including its mandate that programs and services be administered in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 41.51. *See also* 45 C.F.R. §§ 84.4 and 84.52.

130. By refusing to respond to reasonable accommodation requests of disabled Medicaid recipients, including the plaintiff, defendants violate the Rehabilitation Act.

131. By intentionally, deliberately, and willfully refusing to respond to reasonable accommodation requests of disabled Medicaid recipients, including the plaintiff, defendants violate the Rehabilitation Act.

132. Defendants failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

133. Defendants' conduct has been intentional and willful and was done under color of law with specific intent to harass and disrupt the civil rights of plaintiff including the due process rights of the plaintiff and to cause her intentional harm in violation of plaintiff's Constitutional and Civil Rights.

134. That by reason of the foregoing, plaintiff has suffered and will continue to suffer conscious pain and agony; has suffered and will continue to suffer severe physical, mental and emotional pain and anguish, and has suffered and sustained serious and permanent injuries.

135. That by reason of the foregoing, plaintiff has been unable to attend to her usual occupation and duties, and has suffered and sustained severe and serious economic loss.

136. That by reason of the foregoing, plaintiff, Lisa Scholtz, has also been damaged in the sum of One Million and 00/100 Dollars ($1,000,000.00) in compensatory damages.

**THIRD SET OF CLAIMS**
**Federal Medicaid Law**

137. Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 136 with the same force and effect as if set forth more fully herein.

138. By permitting SCDSS to consistently fail to provide case management for persons with disabilities who are authorized to receive Medicaid services, including the plaintiff, by permitting SCDSS to adopt unlawful home care policies such as the backup policies described herein, by failing to properly monitor and supervise New York's Medicaid program, and by failing to ensure an adequate number of private duty nurses in Suffolk County, DOH has abdicated its responsibilities under the single state agency provisions of the Medicaid Act to administer and supervise New York State's Medicaid Program. 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10.

139. Defendants' unlawful policies and practices, of refusing to provide case management for persons with disabilities who are authorized to receive Medicaid services, including the plaintiff, and their failure to ensure an adequate number of private duty nurses in Suffolk County, violate the federal Medicaid law requiring that the state plan for medical assistance be in effect in all political subdivisions of the State. 42 U.S.C. § 1396a(a)(1) and 42 C.F.R. § 431.50.

140. Defendants' unlawful policies and practices, of failing to provide case management

for persons with disabilities who are authorized to receive Medicaid services, including the plaintiff, and their failure to ensure an adequate number of private duty nurses in Suffolk County, violate the timely care provisions in federal Medicaid law requiring that services be provided with reasonable promptness to all eligible individuals in a manner consistent with the best interests of the recipients. 42 U.S.C. §§ 1396a(a)(8) and (19). *See also*, 42 C.F.R. § 435.930.

141. Defendants' unlawful policies and practices, of refusing to provide case management for persons with disabilities who are authorized to receive Medicaid services, including the plaintiff, and their failure to ensure an adequate number of private duty nurses in Suffolk County, violate the comparability provisions of the federal Medicaid law requiring that services made available to any individual in the medically needy group must be equal in amount duration and scope for all individuals within the group. 42 U.S.C. § 1396a(a)(10)(B); 42 C.F.R. § 440.240.

142. Defendants' failure to ensure an adequate number of private duty nurses in Suffolk County violates federal Medicaid Law requiring that Medicaid services be sufficient in amount, duration, and scope to reasonably achieve the purpose of the service provided. 42 U.S.C. §§ 1396a(a)(2) and 1396a(a)(10)(C); 42 C.F.R. § 440.230(b). *See also*, 42 C.F.R. § 435.930.

143. Defendants' systemic and consistent failure of ensuring the provision of authorized Medicaid nursing services and case management services to the plaintiff violates the equal access provisions in the federal Medicaid law which require that payments must be "sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area. 42 U.S.C. § 1396a(a)(30)(A) and 42 C.F.R. § 447.204; *see also*, 42 C.F.R. § 435.930.

144. The arbitrary and unreasonable policies and practices of defendants for providing authorized private duty nursing services constitute an unreasonable standard for determining the extent of medical assistance they provide and is inconsistent with the objectives of the Medicaid Act in violation of 42 U.S.C. § 1396a(a)(17).

145. Defendants violate federal Medicaid due process requirements by failing to provide notice and an opportunity for a hearing to the plaintiff pursuant to 42 C.F.R. §§ 431.206 and 431.220 when SCDSS refuses to provide case management and refuses to otherwise assist in ensuring the provision of authorized Medicaid services.

146. Defendants violate federal Medicaid due process requirements by failing to provide notice and an opportunity for a hearing to the plaintiff when authorized Medicaid services are not provided. 42 C.F.R. § 431.206 and 431.220.

147. Defendants violate federal Medicaid due process requirements by failing to provide aid continuing and timely decisions. 42 C.F.R. § 431.244.

148. The above rights are secured to the plaintiff pursuant to 42 U.S.C. § 1983.

149. That by reason of the foregoing, plaintiff has suffered and will continue to suffer conscious pain and agony; has suffered and will continue to suffer severe physical, mental and emotional pain and anguish, and has suffered and sustained serious and permanent injuries.

150. That by reason of the foregoing, plaintiff has been unable to attend to her usual occupation and duties, and has suffered and sustained severe and serious economic loss.

151. That by reason of the foregoing, plaintiff, Lisa Scholtz, has been damaged in the sum of One Million and 00/100 Dollars ($1,000,000.00) in compensatory damages.

**FOURTH SET OF CLAIMS**
**Due Process Clause of the**
**the United States Constitution**

152. Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 151 with the same force and effect as if set forth more fully herein.

153. Defendants violate Lisa Scholtz's rights as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution through arbitrary and irrational Medicaid home care policies and practices which deny her the benefits she is entitled and contradict the recommended course of treatment consisting of nursing services which plaintiff received in the past.

154. SCDSS's conduct, in enacting its backup policies, constitutes deliberate indifference to plaintiff's rights as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

155. Defendants' failure to ensure the provision of nursing services authorized on Lisa Scholtz's care plan violates plaintiff's rights as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

156. Defendants' failure to ensure the provision of medically necessary nursing services to plaintiff constitutes deliberate indifference to her rights as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

157. Defendants' consistent and systemic failure to provide case management services to Medicaid recipients receiving nursing services, such as plaintiff, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

158. Defendants' failure to issue a timely decision, and comply with the Decision and

aid-continuing directives, violates plaintiff's rights as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

159. Defendants' failure to issue a timely decision, and comply with the Decision and aid-continuing directives, constitutes deliberate indifference to plaintiff's medical needs in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

160. Defendants' policy and practice of not providing notice of a right to a hearing when authorized Medicaid services are not provided violates the Due Process Clause of the United States Constitution.

161. Plaintiff was injured as a result of the aforementioned violations of defendants and is entitled to both injunctive relief and monetary damages.

162. Defendants also failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

163. Defendants' conduct has been intentional and willful and was done under color of law with specific intent to harass and disrupt the civil rights of plaintiff including the due process rights of the plaintiff and to cause her intentional harm in violation of plaintiff's Constitutional and Civil Rights.

164. That by reason of the foregoing, plaintiff has suffered and will continue to suffer conscious pain and agony; has suffered and will continue to suffer severe physical, mental and emotional pain and anguish, and has suffered and sustained serious and permanent injuries.

165. That by reason of the foregoing, plaintiff has been unable to attend to her usual

occupation and duties, and has suffered and sustained severe and serious economic loss.

166. The above rights are secured to the plaintiff pursuant to 42 U.S.C. § 1983.

167. That by reason of the foregoing, plaintiff, Lisa Scholtz, has been damaged in the sum of One Million and 00/100 Dollars ($1,000,000.00) in compensatory damages.

## PENDANT STATE LAW CLAIMS

### FIFTH SET OF CLAIMS
### Due Process Clause of the New York State Constitution

168. Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 167 with the same force and effect as if set forth more fully herein.

169. Defendants violate Lisa Scholtz's rights as secured by the Due Process Clause of the New York State Constitution through arbitrary and irrational Medicaid home care policies and practices which denied her the benefits she was entitled and contradict the recommended course of treatment consisting of nursing services which plaintiff received in the past.

170. SCDSS's conduct, in enacting its backup policies, constitutes deliberate indifference to plaintiff's rights as secured to her by the Due Process Clause of the New York State Constitution.

171. Defendants' failure to ensure the provision of nursing services authorized on Lisa Scholtz's care plan violates plaintiff's rights as secured by the Due Process Clause of the New York State Constitution.

172. Defendants' failure to ensure the provision of medically necessary nursing services to plaintiff constitutes deliberate indifference to her rights as secured by the Due Process Clause

of the New York State Constitution.

173. Defendants' consistent and systemic failure to provide case management services to Medicaid recipients receiving nursing services, such as plaintiff, violates the Due Process Clause of the New York State Constitution.

174. Defendants' failure to issue a timely decision, and comply with the Decision and aid-continuing directives, violates plaintiff's rights as secured by the Due Process Clause of the New York State Constitution.

175. Defendants' failure to issue a timely decision, and comply with the Decision and aid-continuing directives, constitutes deliberate indifference to plaintiff's medical needs in violation of the Due Process Clause of the New York State Constitution

176. Defendants' policy and practice of not providing notice of a right to a hearing when Medicaid home care referrals are refused and authorized Medicaid services are not provided violates the Due Process Clause of the New York State Constitution.

177. Plaintiff was injured as a result of the aforementioned violations of defendants and is entitled to both injunctive relief and monetary damages.

178. Defendants failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

179. Defendants' conduct has been intentional and willful and was done under color of law with specific intent to harass and disrupt the civil rights of plaintiff including the due process rights of the plaintiff and to cause her intentional harm in violation of plaintiff's Constitutional and Civil Rights.

180. That by reason of the foregoing, plaintiff has suffered and will continue to suffer conscious pain and agony; has suffered and will continue to suffer severe physical, mental and emotional pain and anguish, and has suffered and sustained serious and permanent injuries.

181. That by reason of the foregoing, plaintiff has been unable to attend to her usual occupation and duties, and has suffered and sustained severe and serious economic loss.

182. That by reason of the foregoing, plaintiff, Lisa Scholtz, has also been damaged in the sum of One Million and 00/100 Dollars ($1,000,000.00) in compensatory damages.

**SIXTH SET OF CLAIMS**
**New York State Medicaid Law**

183. Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 182 with the same force and effect as if set forth more fully herein.

184. Defendants' policies and practices that fail to ensure the provision of appropriate and/or authorized Medicaid nursing and case management services, fail to issue timely decisions and ensure aid to continue directives, and fail provide notice of a right to a hearing violate New York State Medicaid law and regulations. S.S.L. §§ 62; 363; 364(1)(a), (2)(b), (c), (e), and (h); 365; and 365-a(1) and (2)(d); P.H.L. § 3600; 18 N.Y.C.R.R. Part 358; 18 N.Y.C.R.R. §§ 403.4; 500.1; 505.8; 505.14; 505.16; and 505.23.

185. Defendants' backup policies violate State Medicaid law by requiring as a condition of eligibility that informal caregivers are included in the Medicaid recipient's care plan to provide backup assistance even though they are not willing and able to assist.

186. That by reason of the foregoing, plaintiff has suffered and will continue to suffer

conscious pain and agony; has suffered and will continue to suffer severe physical, mental and emotional pain and anguish, and has suffered and sustained serious and permanent injuries.

187. That by reason of the foregoing, plaintiff has been unable to attend to her usual occupation and duties, and has suffered and sustained severe and serious economic loss.

188. That by reason of the foregoing, plaintiff, Lisa Scholtz, has been damaged in the sum of One Million Dollars ($1,000,000.00).

**SEVENTH SET OF CLAIMS**
**Tort Law**

189. Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 188 with the same force and effect as if set forth more fully herein.

190. At all times relevant hereto, defendants carelessly and negligently denied case management services and nursing services; failed to exercise ordinary and reasonable care to insure that no unnecessary harm befell the plaintiff; and carelessly, improperly, and negligently failed to provide case management services and nursing services for which plaintiff was eligible, thereby causing injury to plaintiff.

191. That solely by reason of the aforementioned, plaintiff, Lisa Scholtz, has suffered and will continue to suffer conscious pain and agony; has suffered and will continue to suffer severe physical, mental, and emotional pain and anguish; and has suffered and sustained serious permanent injuries.

192. That by reason of the foregoing, plaintiff, Lisa Scholtz, has been unable to attend to her usual occupation and duties, and has suffered and sustained severe and serious economic

loss.

193. That as a result of the foregoing, plaintiff, Lisa Scholtz, suffered injuries and damages caused solely by the negligence of the defendants without any negligence on the part of the plaintiff contributing thereto.

194. That by reason of the foregoing, plaintiff, Lisa Scholtz, has been damaged in the sum of One Million Dollars ($1,000,000.00).

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that this Court:

1. ENTER a judgement declaring that:

a) Defendants' policy and practice of failing or refusing to provide case management services to Medicaid recipients authorized for private duty nursing services violates the Due Process Clauses of the United States and New York Constitutions as well as federal and state laws and regulations;

b) Defendants' policy and practice of failing to provide notice of the opportunity for a fair hearing when authorized Medicaid nursing services are not provided violates the Due Process Clauses of both the United States and New York Constitutions as well as federal and state laws and regulations;

c) Defendants' backup policies violate the United States and New York Constitutions as well as federal and state laws and regulations; and

d) Defendants' failure to ensure the provision of authorized Medicaid services violates the United States and New York Constitutions as well as federal and state laws and

regulations;

2. ENTER a permanent injunction:

a) Ordering that defendants provide plaintiff with notice of her right to a fair hearing should they fail to ensure the provision of authorized Medicaid nursing services in the future;

b) Ordering that defendants ensure the provision of authorized Medicaid private duty nursing services;

c) Ordering that defendants abrogate the backup policies that restrict Medicaid private duty nursing services; and

d) Ordering that defendants modify their policies for the provision of Medicaid private duty nursing services, including case management services, to ensure that services are provided to individuals with disabilities to prevent unnecessary institutionalization and maintain individuals in the least restrictive and most integrated setting appropriate for their needs;

3. AWARD compensatory damages as follows:

Plaintiff is entitled to a judgement against defendants for compensatory damages in the total sum of One Million Dollars ($1,000,000.00) on the First Set of Claims; and plaintiff is entitled to a judgement against defendants for compensatory damages in the total sum of One Million Dollars ($1,000,000.00) on the Second Set of Claims; and plaintiff is entitled to a judgement against defendants for compensatory damages in the total sum of One Million Dollars ($1,000,000.00) on the Third Set of Claims; and plaintiff is entitled to a judgement against defendants for compensatory damages in the total sum of One Million Dollars ($1,000,000.00) on the Fourth Set of Claims; and plaintiff is entitled to a judgement against defendants for compensatory damages in the total sum of One Million Dollars ($1,000,000.00) on the Fifth Set

of Claims; and plaintiff is entitled to a judgement against defendants for compensatory damages in the total sum of One Million Dollars ($1,000,000.00) on the Sixth Set of Claims; and plaintiff is entitled to a judgement against defendants for compensatory damages in the total sum of One Million Dollars ($1,000,000.00) on the Seventh Set of Claims; together with interest, costs, and other damages that the Court may deem just under the circumstances;

4. AWARD a reasonable attorneys fee to plaintiff's counsel not restricted by the National Legal Services Corporation Act from receiving attorneys fees;

5. AWARD costs to plaintiff; and

6. ORDER such other relief as this court may deem just and proper under the circumstances.

Dated: July 26, 2002
Islandia, New York

Nassau/Suffolk Law Services
1757 Veterans Highway, Suite 50
Islandia, New York 11749

By: Phil Siegel
_______________________
Phil Siegel, # PS 6008
Robert Briglio, # RB 9942
Staff Attorneys
Nassau/Suffolk Law Services
631-232-2400

Patricia M. Meisenheimer, Esq.
Bracken, Margolin, & Gouvis, LLP
Attorneys for Plaintiff
One Suffolk Square, Suite 300
Islandia, NY 11749